**FIFTH DIVISION**
**DILLARD, P. J.,**
**REESE and BETHEL, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**February 23, 2017**

# In the Court of Appeals of Georgia

A16A1835. CORRUGATED REPLACEMENTS, INC. et al. v. JOHNSON et al.

BETHEL, Judge.

In July 2011, Jacob Lee was under the influence of alcohol and an inhalant while driving a truck that struck a van carrying the Johnson family, killing one Johnson child and severely injuring other family members. The truck driven by Jacob was owned by Corrugated Replacements, Inc., a company in which Jacob's father, Robert Lee, held an ownership interest. The Johnson parents sued Robert and Corrugated Replacements (the "Defendants"), and the Defendants moved for summary judgment. The trial court denied the Defendants' motion, and we granted the Defendants' application for interlocutory appeal.

On appeal, the Defendants argue that the trial court erred in denying their motion for summary judgment because (1) the Johnsons admitted that there was no evidence to support their negligent entrustment claim; (2) Corrugated was not vicariously liable for Jacob's negligence because he was not acting within the scope and course of his employment; (3) the joint venture doctrine was inapplicable and thus could not impose liability on the Defendants; (4) the Johnsons' attempts to obtain damages under a reverse veil piercing theory is foreclosed by law; and (5) the Plaintiffs' request for uncapped punitive damages was not supported by law. We agree with each of these arguments and therefore reverse the denial of summary judgment to the Defendants.[1]

Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. OCGA § 9-11-56(c). We review a grant or denial of summary judgment de novo and construe the evidence in the light most favorable to the nonmovant. *Home Builders Ass'n of Savannah v. Chatham Cty.*, 276 Ga. 243, 245 (1) (577 SE2d 564) (2003).

---

[1] The Johnsons also sued Jacob, who was a minor at the time of the accident and at the time the suit was filed, but the claims against him are not a part of this appeal. Also not before us is the Johnsons' claim that Robert was liable under the family purpose doctrine, because Robert does not challenge the denial of summary judgment on this claim. Therefore, these claims remain pending below.

So viewed, the evidence, which is largely undisputed, shows that Jacob began working for pay at Corrugated when he was 14 years old. Jacob did various tasks at Corrugated and was required to do "whatever he was asked to do." Although Jacob did not drive Corrugated vehicles as a part of his job, he had full access to company vehicles. In February 2011, Jacob was given a 2011 Dodge Ram — the truck Jacob was driving when he struck the Johnsons — as a gift for his 16th birthday. In deposition, Robert stated that he personally paid for the truck and gave it to Jacob for his personal use, and that Robert listed Corrugated as owner on the title in the event the vehicle was needed for company purposes. Corrugated paid insurance on the truck and allowed Jacob to use a company credit card to pay for fuel. Although no maintenance was performed on the truck prior to the July 2011 accident, the record shows that Corrugated paid for the maintenance of other company-owned vehicles purchased for other Lee family members, even those not employed by the company, that were used for personal reasons.

At the time of the July 2011 collision, Jacob was not working for Corrugated. Other evidence also showed that, prior to the collision, Jacob had never received a traffic ticket or been involved in an accident, and it was undisputed that Robert had no knowledge that Jacob drank alcohol or used inhalants.

1. The Defendants argue that the trial court erred in denying their motion for summary judgment on the Johnsons' negligent entrustment and respondeat superior claims because the Johnsons conceded that these claims failed as a matter of law. In response, the Johnsons argue that because they did not contest the Defendants' motion on these issues, the claims were no longer before the trial court for consideration. Regardless of whether the Johnsons contested the Defendants' motion for summary judgment on these two claims, they were not disposed of and remain pending below. Therefore, we must consider whether the Defendants are entitled to summary judgment.

(a) The record confirms that the Johnsons admitted that Robert, part owner of Corrugated, was unaware that Jacob drank alcohol or used inhalants. Additionally, the Johnsons pointed to no evidence showing that Jacob's uncle, the other co-owner of Corrugated, knew about Jacob's drinking or use of inhalants.[2] The undisputed evidence also shows that Jacob never received a traffic ticket or was involved in an accident.

_____

[2] Jacob's uncle did not know the truck was owned by Corrugated until after the accident.

A necessary element of a negligent entrustment claim is that the owner of a vehicle has actual knowledge that the driver is incompetent or habitually reckless. *See Bashlor v. Walker*, 303 Ga. App. 478, 480 (1) (a) (693 SE2d 858) (2010). Here, the record is devoid of evidence establishing such knowledge, and Corrugated was therefore entitled to summary judgment on the negligent entrustment claim. *See Cowart v. Widener*, 287 Ga. 622, 623 (1) (a) (697 SE2d 779) (2010) (a defendant is entitled to summary judgment where the plaintiff is unable to point to specific evidence in the record giving rise to a genuine issue of fact on plaintiff's claims).

(b) As for the Johnsons' respondeat superior claim, an employer is liable under this theory when the employee is acting within the course and scope of his employment. *Hicks v. Heard*, 286 Ga. 864, 865 (692 SE2d 360) (2010). Although a presumption arises that the employee was acting in the course and scope of employment when the employee was driving his employer's vehicle at the time of the collision, the employer may overcome this presumption "by presenting uncontradicted evidence showing that the employee was not acting in the course and scope of his employment." *See Dougherty Equip. Co., Inc. v. Roper*, 327 Ga. App. 434, 436 (1) (a) (757 SE2d 885) (2014).

5

Here, although Jacob was driving a Corrugated vehicle at the time of the collision, the Johnsons admitted that Jacob was engaged in a purely personal activity and was not acting within the course and scope of his employment with Corrugated at the time of the collision. Therefore, Corrugated was entitled to summary judgment on the respondeat superior claim. *See Dougherty Equip. Co.*, 327 Ga. App. at 436-37 (1) (a).

2. The Defendants also argue that they were entitled to summary judgment on the Johnsons' claim that the Defendants were liable under a joint venture theory, which was raised for the first time in the Johnsons' response to the Defendants' summary judgment motion.[3] We agree that the Defendants were entitled to summary judgment on this claim.

"The theory of joint venturers arises where two or more parties combine their property or labor, or both, in a joint undertaking for profit, with rights of mutual control (provided the arrangement does not establish a partnership), so as to render

_____

[3] Although the Johnsons did not advance this theory in their complaint, it is properly before us because it was raised below, and the pleadings are deemed amended to conform to the evidence presented. *See DeLoach v. Foremost Ins. Co.*, 147 Ga. App. 124, 124-25 (248 SE2d 193) (1978) (holding that, with regard to a theory raised by a plaintiff for the first time at a hearing on a motion for summary judgment, the pleadings were deemed amended to conform to the evidence presented and that the issue was properly considered on appeal (citations omitted)).

all joint venturers liable for the negligence of the other." *Kissun v. Humana, Inc.*, 267 Ga. 419, 420 (479 SE2d 751) (1997). A joint venture cannot exist without the right to exercise mutual control. *Rossi v. Oxley*, 269 Ga. 82, 83 (1) (495 SE2d 39) (1998). Thus, for a joint venture to exist, there must be not only a joint interest in the objects and purpose of the enterprise, but also an equal right, express or implied, to direct and control the conduct of one another in the activity causing the injury. *Williams v. Chick-fil-A, Inc.*, 274 Ga. App. 169, 170 (617 SE2d 153) (2005); *Security Dev. & Inv. Co. v. Williamson*, 112 Ga. App. 524, 525 (145 SE2d 581) (1965). It is the right of mutual control, rather than the actual exercise, that must be shown. *Kelleher v. Pain Care of Georgia, Inc.*, 246 Ga. App. 619, 620 (540 SE2d 705) (2000).

Here, the Johnsons allege that the purchase and use of the company truck was a joint undertaking by Jacob, Robert, and Corrugated to satisfy the vehicular needs of each member.[4] Assuming, without deciding, that this was a "joint undertaking for

[4] The Johnsons allege that each member of the joint venture contributed to and profited from the arrangement in the following ways: Robert contributed to the joint venture by paying for the truck himself, and "profited" by having the company pay for the maintenance and insurance costs of a family vehicle; Jacob contributed by providing daily operation of the vehicle and ensuring the vehicle was fueled and properly maintained for company use, and benefitted by having a vehicle for his personal use; and Corrugated paid for the vehicle's maintenance and operational

profit," the critical element of mutual control is still missing. The evidence shows that the Defendants had the right to control Jacob's use of the company vehicle, given that it was considered one of the company's "on-call" vehicles that could be used by the company at any time. Robert also testified that he could get in the truck at any time.

There is no evidence, however, that Jacob had a mutual right. Although Jacob was given use of the vehicle for personal reasons, the undisputed evidence shows that company had the right to use the vehicle whenever the company needed it. There is no record evidence that Jacob had any right, express or implied, to direct or control the Defendants' use of the vehicle, including the right to keep the Defendants from using the vehicle when they desired. Without the right of each member to direct and control the conduct of the other, there is no joint venture. *See Rossi*, 269 Ga. at 83 (1) (agreement among doctors to be "on-call" for one another did not establish a joint venture in the absence of evidence that the physicians controlled each other's professional judgment in the treatment of patients); *Yancey v. Watkins*, 308 Ga. App. 695, 696–97 (708 SE2d 539) (2011) (farmworker and landowner were not engaged in joint venture where there was no evidence the farmworker had an equal right to

expenses, and profited by having an accessible, "on-call" vehicle that it did not purchase, depreciating the value of the truck for tax purposes, and delegating the day-to-day responsibility of the truck to Jacob.

8

control whether and how the landowner farmed his crop). Because there is no evidence of mutual control, the trial court erred by denying summary judgment to the Defendants on the joint venture claim.

3. The Defendants next argue that the Johnsons' reverse veil-piercing claim is not recognized as a viable claim in Georgia and, therefore, could not defeat the Defendants' motion for summary judgment. We agree.

There are two types of reverse piercing claims — "insider" and "outsider" claims. *See Acree v. McMahan*, 276 Ga. 880, 881 (585 SE2d 873) (2003). The Johnsons are asserting an outsider reverse piercing claim in an attempt to permit them, as outsiders of the Corrugated corporation, to pierce the corporate veil to satisfy the debts of a corporate insider out of Corrugated's assets. *Id.* ("Outsider reverse veil-piercing extends the traditional veil-piercing doctrine to permit a third-party creditor to pierce the veil to satisfy the debts of an individual out of the corporation's assets." (citation and punctuation omitted)). The problem for the Johnsons is that the Supreme Court of Georgia in *Acree* refused to recognize outsider reverse veil-piercing as a viable claim. *Id.* at 881-83.

The Johnsons argue that, if their joint venture theory fails, which we concluded it has, they would be left without adequate legal remedies and, as a result, their case

9

would fall within a narrow exception to the general rule that outsider reverse piercing claims are disallowed. The Johnsons argue that *Acree* allowed for reverse veil-piercing claims to proceed in situations when a plaintiff is left without adequate legal remedies, and that this exception has been recognized by this Court in *Carrier 411 Servs., Inc. v. Insight Tech., Inc.*, 322 Ga. App. 167 (744 SE2d 356) (2013). The Johnsons misread *Acree* and *Carrier 411*, as neither case held that an exception existed for the general rejection of the reverse veil-piercing theory.

In *Acree*, the Supreme Court provided several reasons why the reverse veil-piercing theory should be rejected, reasoning that the novel theory had been recognized only in rare circumstances not applicable here. *Acree*, 276 Ga. at 881-83. In reaching the decision to reject such a claim, the Supreme Court then stated, "Furthermore, disregard of the corporate form rests on equitable principles. As a consequence, it is appropriately granted only in the absence of adequate remedies at law." *Id.* at 882-83 (citations and punctuation omitted).

The Johnsons argue that this statement "left the door open" for reverse veil-piercing claims. But the Johnsons read the quote in isolation, and ignore the rest of the Supreme Court's analysis. In particular, in addition to explaining that reverse veil-piercing had been recognized in only very limited circumstances, the Supreme Court

10

also explained that traditional remedies, like agency principles and standard judgment collection procedures, adequately covered situations in which an outsider seeks to recover from a corporation for the conduct of a controlling stockholder. *Id.* at 883. Because existing remedies were adequate, the Supreme Court concluded that inventing a new theory of liability like reverse veil- piercing was unnecessary and "would constitute a radical change to the concept of piercing the corporate veil in this state and, thus, should be created by the General Assembly and not by this Court." *Id.* This strong language rejecting reverse piercing leaves no door open for an exception to exist. The Supreme Court firmly closed that door, and we are in no position to carve a hole in it. *See* Ga. Const. of 1983, Art. VI, Sec. VI, Par. VI ("The decisions of the Supreme Court shall bind all other courts as precedents."); *Etkind v. Suarez*, 234 Ga. App. 108, 108 (505 SE2d 831) (1998) ("[T]his court has no authority to overrule or modify a decision of the Supreme Court of Georgia[.]"). In no way did our discussion in *Carrier 411* attempt to alter that landscape. Although *Carrier 411* cited *Acree* and stated that "a claim for reverse-piercing of the corporate veil is appropriately granted only in the absence of adequate remedies at law," this quote does not reflect the holding of *Carrier 411*. There, we rejected a defendant's claim that the trial court was allowing a plaintiff to pursue a reverse piercing claim. *Carrier*

11

*411*, 322 Ga. App. at 170 (2). We rejected the defendant's assertion because the plaintiff was not pursuing an equitable action like reverse veil piercing but was actually pursuing a garnishment action that was expressly authorized by law. *Id.* It is axiomatic that:

> The full text of judicial decisions is not law. Only the holdings of judicial decisions are law. And a decision's holding is limited to the factual context of the case being decided and the issues that context necessarily raises. Language that sounds like a holding — but actually exceeds the scope of the case's factual context — is not a holding no matter how much it sounds like one.

*Classic Commer. Servs. v. Baldwin*, 336 Ga. App. 183, 190 (784 SE2d 44) (2016) (Peterson, J., concurring fully and specially) (citation and punctuation omitted). Thus, neither *Acree* nor *Carrier 411* created an exception to the rule that reverse piercing is not a viable claim in Georgia.

We also reject the Johnsons' argument that they need to reverse pierce Corrugated because they are without adequate legal remedies to obtain a judgment against the Defendants. As discussed above, a reverse piercing claim is an attempt by outsiders, such as third-party creditors, to pierce the corporate veil in order to satisfy the debts of an individual out of the corporation's assets. *See Acree*, 276 Ga. at 881.

12

To the extent that claims of liability remain pending against Jacob and Robert (under the family purpose doctrine), there is no suggestion that the traditional procedures for collecting a judgment on those claims against them would be inadequate. Thus, there is no basis to allow a reverse veil-piercing claim. *See Acree*, 276 Ga. at 883 (rejecting reverse piercing claim because standard judgment collection procedures were sufficient to cover shareholder liability); *Carrier 411*, 322 Ga. App. at 170 (2) (plaintiff entitled to file garnishment action against corporation to satisfy unpaid judgment of corporation's employee). The trial court therefore erred in denying summary judgment on this claim.

4. In their final enumeration of error, the Defendants argue that they were entitled to summary judgment on the Johnsons' claim for punitive damages because the evidence would support such damages only as to Jacob, the active tortfeasor. We agree.

As a preliminary matter, because we have concluded that Corrugated was entitled to summary judgment on all of the Johnsons' claims before us, the punitive damages claim against Corrugated arising from such claims must also fail, as it was a derivative claim. A derivative claim cannot survive the absence of compensatory damages on the underlying claim. *Boeing Co. v. Blane Int'l Grp.*, 276 Ga. App. 672,

13

676 (2) (624 SE2d 227) (2005). (reversing award of punitive damages where underlying claims were reversed).

As for the remaining family purpose doctrine claim against Robert, the Johnsons asserted a claim for uncapped punitive damages pursuant to OCGA § 51-12-5.1(f) based on Jacobs alleged intoxication. That statute pertinently provides:

> In a tort case in which the cause of action does not arise from product liability, if it is found that . . . the defendant acted or failed to act while under the influence of alcohol, drugs other than lawfully prescribed drugs administered in accordance with prescription, or any intentionally consumed glue, aerosol, or other toxic vapor to that degree that his or her judgment is substantially impaired, there shall be no limitation regarding the amount which may be awarded as punitive damages against an active tort-feasor but such damages shall not be the liability of any defendant other than an active tort-feasor.

OCGA § 51-12-5.1(f).

The Defendants argue that the Johnsons' punitive damages claim against Robert is foreclosed by precedent from this Court, including our decision in *Capp v. Carlito's Mexican Bar & Grill #1, Inc.*, 288 Ga. App. 779 (655 SE2d 232) (2007).[5]

---

[5] The Defendants also rely on *Am. Material Services, Inc. v. Giddens*, 296 Ga. App. 643 (675 SE2d 540) (2009), which cited the *Capp* decision. *Id.* at 647 (2). The Johnsons argue that our statements interpreting OCGA § 51-12-5.1(f) are dicta, because before citing *Capp*, we had already concluded that there was no evidentiary

14

In *Capp*, a plaintiff sued a restaurant under the Georgia Dram Shop Act, alleging that one of the restaurant's employees knowingly served alcohol to a person who was in a state of noticeable intoxication before that person drove away drunk and caused an accident. *Id.* at 779-82 (1). We held that the punitive damages against the restaurant were not available under OCGA § 51-12-5.1(f), because the statute authorized such damages to be assessed only against the drunk driver. *Capp*, 288 Ga. App. at 783-84 (3). In reaching that conclusion, we reasoned that, in cases where a defendant committed a tort while under the influence of alcohol, the "statute makes clear . . . that such damages shall not be the liability of any defendant other than the active tort-feasor, that is the defendant acting under the influence of alcohol." *Id.* (citation and punctuation omitted).

The Johnsons do not argue that *Capp* was wrongly decided, and so we do not revisit the issue. Instead, we consider the Johnsons' argument that *Capp* is distinguishable because that case involved a claim of direct liability, while this suit involved issues of vicarious liability and agency. We are not persuaded that this is a meaningful difference. In *Capp*, we emphasized that the impaired driver who commits

---

basis to support a punitive damages verdict. *Id.* We need not resolve whether *Giddens* applies, because *Capp* squarely resolves the question before us.

15

a tort is the "active tortfeasor" under the meaning of OCGA § 51-12-5.1(f), even though the tort claim in that case was based on the active conduct of the restaurant's employee in serving alcohol to the driver. *Capp*, 288 Ga. App. 17 779-80, 783-84 (1), (3). Under this reasoning, the only active tortfeasor in this case for OCGA § 51-12-5.1(f) purposes is Jacob, who struck the Johnsons van while driving under the influence of alcohol and an inhalant. Thus, the Johnsons cannot recover punitive damages against Robert, who is, at most, a passive tortfeasor under the family purpose doctrine. Because punitive damages could not be assessed against the Defendants, we reverse the denial of summary judgment on the punitive damages claim against them.

*Judgment reversed. Dillard, P. J., and Reese, J., concur*.