309 Ga. 230
FINAL COPY

S20A0107.  REID v. MORRIS et al.

BOGGS, Justice.

At about 5:00 p.m. on September 1, 2016, Lakenin Morris was driving his older cousin Keith Stroud's car when he collided with a car driven by 18-year-old Alonzo Reid, sending Reid to the hospital. Morris had been drinking with Stroud, and Stroud asked Morris to drive his car and gave him the keys even though Morris was obviously drunk and Stroud knew that Morris was drunk, did not have a valid driver's license, and had a habit of recklessness. Morris later pled guilty to driving under the influence (DUI).

Reid sued Morris for negligence and Stroud for negligent entrustment, and both were found liable for Reid's injuries (Morris by default and Stroud by summary judgment). In a bench trial, the court awarded Reid more than $23,000 in compensatory damages, which the court apportioned equally between the two defendants, citing the current version of the apportionment statute, OCGA § 51-

12-33. See Ga. L. 2005, p. 1, §§ 12, 15 (requiring trier of fact to apportion damages for causes of action arising on or after February 16, 2005, in cases to which the apportionment statute applies). The trial court also found that Morris and Stroud acted while under the influence of alcohol and further found, by clear and convincing evidence, that they acted in a manner that showed willful misconduct, malice, wantonness, and that "entire want of care which would raise the presumption of conscious indifference to consequences." OCGA § 51-12-5.1 (b). The court ordered Morris to pay $50,000 in punitive damages, the exact amount that Reid requested.[1]

---

[1] The punitive damages statute, OCGA § 51-12-5.1, says as follows:

(a) As used in this Code section, the term "punitive damages" is synonymous with the terms "vindictive damages," "exemplary damages," and other descriptions of additional damages awarded because of aggravating circumstances in order to penalize, punish, or deter a defendant.

(b) Punitive damages may be awarded only in such tort actions in which it is proven by clear and convincing evidence that the defendant's actions showed willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of conscious indifference to consequences.

(c) Punitive damages shall be awarded not as compensation to a plaintiff but solely to punish, penalize, or deter a defendant.

(d) (1) An award of punitive damages must be specifically prayed for in a complaint. In any case in which punitive damages are claimed, the trier of fact shall first resolve from the evidence produced at trial whether an award of punitive damages shall be made. This finding shall be made specially through an appropriate form of verdict, along with the other required findings.

(2) If it is found that punitive damages are to be awarded, the trial shall immediately be recommenced in order to receive such evidence as is relevant to a decision regarding what amount of damages will be sufficient to deter, penalize, or punish the defendant in light of the circumstances of the case. It shall then be the duty of the trier of fact to set the amount to be awarded according to subsection (e), (f), or (g) of this Code section, as applicable.

(e) (1) In a tort case in which the cause of action arises from product liability, there shall be no limitation regarding the amount which may be awarded as punitive damages. Only one award of punitive damages may be recovered in a court in this state from a defendant for any act or omission if the cause of action arises from product liability, regardless of the number of causes of action which may arise from such act or omission.

(2) Seventy-five percent of any amounts awarded under this subsection as punitive damages, less a proportionate part of the costs of litigation, including reasonable attorney's fees, all as determined by the trial judge, shall be paid into the treasury of the state through the Office of the State Treasurer. Upon issuance of judgment in such a case, the state shall have all rights due a judgment creditor until such judgment is satisfied and shall stand on equal footing with the plaintiff of the original case in securing a recovery after payment to the plaintiff of damages awarded other than as punitive damages. A judgment

Reid also asked the trial court to order Stroud to pay $100,000 in punitive damages, but the court declined. The court ruled that, in spite of its findings that Stroud acted while under the influence of alcohol and engaged in conduct susceptible to punitive damages, it could not order him to pay punitive damages as a result of the Court

---

debtor may remit the state's proportional share of punitive damages to the clerk of the court in which the judgment was rendered. It shall be the duty of the clerk to pay over such amounts to the Office of the State Treasurer within 60 days of receipt from the judgment debtor. This paragraph shall not be construed as making the state a party at interest and the sole right of the state is to the proceeds as provided in this paragraph.

(f) In a tort case in which the cause of action does not arise from product liability, if it is found that the defendant acted, or failed to act, with the specific intent to cause harm, or that the defendant acted or failed to act while under the influence of alcohol, drugs other than lawfully prescribed drugs administered in accordance with prescription, or any intentionally consumed glue, aerosol, or other toxic vapor to that degree that his or her judgment is substantially impaired, there shall be no limitation regarding the amount which may be awarded as punitive damages against an active tort-feasor but such damages shall not be the liability of any defendant other than an active tort-feasor.

(g) For any tort action not provided for by subsection (e) or (f) of this Code section in which the trier of fact has determined that punitive damages are to be awarded, the amount which may be awarded in the case shall be limited to a maximum of $250,000.00.

(h) This Code section shall apply only to causes of action arising on or after April 14, 1997.

of Appeals' interpretation of OCGA § 51-12-5.1 (f) in *Capp v. Carlito's Mexican Bar & Grill # 1, Inc.*, 288 Ga. App. 779 (655 SE2d 232) (2007), and *Corrugated Replacements, Inc. v. Johnson*, 340 Ga. App. 364 (797 SE2d 238) (2017). The trial court understood those decisions to hold that in OCGA § 51-12-5.1 (f), "[t]he 'active tortfeasor' means the DUI driver and this is the only person the statute authorizes an award of punitive damages against."

Reid argued in the trial court that OCGA § 51-12-5.1 (f), as so interpreted, violates the provision of Paragraph XI (a) of Article I, Section I of the Georgia Constitution that guarantees that "[t]he right to trial by jury shall remain inviolate[.]" The trial court expressly but summarily rejected Reid's constitutional challenge to OCGA § 51-12-5.1 (f) based on Paragraph XI (a).

Reid timely appealed to this Court. Morris and Stroud did not file briefs, but the Attorney General, the Georgia Defense Lawyers Association, and the Georgia Trial Lawyers Association all filed helpful amicus briefs. The case was orally argued on April 22, 2020.

As we explain below, OCGA § 51-12-5.1 (f) does not categorically bar an award of punitive damages against Stroud, because the term "active tort-feasor," as used in the statute, is not necessarily limited to drunk drivers. The trial court therefore erred in finding that it was categorically prohibited from considering whether Stroud was an "active tort-feasor" for purposes of analyzing the appropriateness of punitive damages under the facts of this case.[2] Accordingly, we vacate in part the trial court's judgment, and we remand the case for the trial court: (1) to determine whether Stroud was intoxicated to the degree that his judgment was substantially impaired and whether he was an "active tort-feasor" within the meaning of OCGA § 51-12-5.1 (f); and (2) if so, to set the amount of punitive damages to be awarded against Stroud.

---

[2] As discussed above, Reid claims that OCGA § 51-12-5.1 (f) violates his constitutional right to trial by jury; this claim was raised below and ruled upon by the trial court, and hence we have jurisdiction over this appeal. A separate question arose at oral argument about whether Reid is entitled to assert a jury trial claim at all, given that he consented to a bench trial. This appears to be a novel constitutional question, it has not been briefed or argued by the parties, and there is no decision on this point from the trial court. Our interpretation of OCGA § 51-12-5.1 (f) allows us to leave these questions for another day.

Reid contends that, as a matter of statutory interpretation, the trial court erred in ruling that in OCGA § 51-12-5.1 (f), "[t]he 'active tortfeasor' means the DUI driver and this is the only person the statute authorizes an award of punitive damages against." We agree with Reid.

*Statutory Background.* The Tort Reform Act of 1987 made several changes to Georgia damages law. See Ga. L. 1987, p. 915. One change was the adoption of a new punitive damages statute, OCGA § 51-12-5.1. See Ga. L. 1987, p. 915, § 5. Another was the adoption of the apportionment statute, OCGA § 51-12-33, which at the time of its enactment preserved joint and several liability with rights of contribution and indemnity as the default rule in tort cases; permitted, but did not require, the trier of fact to "apportion its award of damages among the persons who are liable and whose degree of fault is greater than that of the injured party according to the degree of fault of each person"; and specified that "[d]amages, if apportioned by the trier of fact as provided in this Code section, shall be the liability of each person against whom they are awarded, shall

not be a joint liability among the persons liable, and shall not be subject to any right of contribution." Ga. L. 1987, p. 915, § 8.

Two years later, in *McClure v. Gower*, 259 Ga. 678 (385 SE2d 271) (1989), we examined OCGA § 51-12-5.1, noting that it "sets forth substantive and procedural rules to govern punitive-damage awards in tort actions in this state." Id. at 681. We then explained the relationship among OCGA § 51-12-5.1's various subsections:

> Subsection (a) of § 51-12-5.1 defines punitive damages, and subsection (b) states the circumstances under which such damages are awardable. Subsection (c) states that "punitive damages shall be awarded not as compensation to a plaintiff but solely to punish, penalize, or deter a defendant."
>
> Subsection (d) is divided into two paragraphs. Paragraph (1) of subsection (d) provides, in pertinent part, that, "in any case in which punitive damages are claimed, the trier of fact shall first resolve from the evidence produced at trial whether an award of punitive damages shall be made." Paragraph (2) provides:
>
>> If it is found that punitive damages are to be awarded, the trial shall immediately be recommenced in order to receive such evidence as is relevant to a decision regarding what amount of damages will be sufficient to deter, penalize, or punish the defendant in light of the circumstances of the case. It shall then be the duty of the trier of fact to set the amount to be awarded according to subsection (e), (f), or (g) . . . .

Subsection (e) of § 51-12-5.1 provides for the award of punitive damages in tort cases arising from product liability; and it is generally provided that there shall be no limitation regarding the amount of the award, although there may be only one award for any act or omission, with seventy-five percent of any amounts awarded, less a proportionate part of litigation expenses (including reasonable attorney's fees) being paid into the state treasury. Subsection (f) states that in other tort actions, if the defendant acted, or failed to act, with the specific intent to cause harm, there shall be no limitation regarding the amount of punitive damages awarded. Subsection (g) states that in tort actions not provided for in subsections (e) and (f), the amount of the punitive-damage award shall be limited to a maximum of $250,000.00.

*McClure*, 259 Ga. at 682 & n.7 (punctuation and footnotes omitted).

Four years later, in *Mack Trucks v. Conkle*, 263 Ga. 539 (436 SE2d 635) (1993), we elaborated on the statute's "three-tiered" structure for punitive damages awards:

It can be seen that subsections (e), (f) and (g) constitute a consistent statutory scheme for the regulation of punitive damages. In a case in which the cause of action arises from product liability, the risk falls on society as well as on the individual plaintiff who has been harmed. Because of the potential ability to damage numerous citizens, the defendant may be punished by the imposition of unlimited damages, but this may occur only one time. . . . As the risk and harm are distributed between the individual plaintiff and all citizens of

Georgia, the legislature has seen fit to distribute a portion of the damages awarded to those at potential risk – all citizens of the state. . . .

In a case in which the cause of action does not arise from product liability, but the defendant acted or failed to act with the specific intent to cause harm, the legislature has set no limit on the amount of punitive damages. Subsection (f). This is so because the defendant, acting with great culpability, placed an individual at risk. In this instance the individual is entitled to retain all punitive damages awarded him.

The final tier of the statute involves neither product liability nor specific intent to harm. In this type case the individual plaintiff, rather than society, is harmed, but the legislature has determined that, absent specific intent to harm, there are public policy reasons which dictate that a cap should be placed on punitive damages. . . .

Id. at 542-543.

*Evolution of OCGA § 51-12-5.1 (f)*. As enacted in 1987, OCGA § 51-12-5.1 (f) said:

In a tort case in which the cause of action does not arise from product liability, if it is found that the defendant acted, or failed to act, with the specific intent to cause harm, there shall be no limitation regarding the amount which may be awarded as punitive damages.

Ga. L. 1987, p. 915, § 5. The effect of subsection (f) was to except certain defendants from the protection of subsection (g)'s $250,000 cap on punitive damages awards.

In 1997, the General Assembly amended OCGA § 51-12-5.1 (f) to its current form by inserting new language in two places. See Ga. L. 1997, p. 837, § 1. As a result, OCGA § 51-12-5.1 (f) now says as follows, with the inserted language italicized:

> In a tort case in which the cause of action does not arise from product liability, if it is found that the defendant acted, or failed to act, with the specific intent to cause harm, *or that the defendant acted or failed to act while under the influence of alcohol, drugs other than lawfully prescribed drugs administered in accordance with prescription, or any intentionally consumed glue, aerosol, or other toxic vapor to that degree that his or her judgment is substantially impaired,* there shall be no limitation regarding the amount which may be awarded as punitive damages *against an active tort-feasor but such damages shall not be the liability of any defendant other than an active tort-feasor.*

The first insert expanded subsection (f) beyond defendants found to have acted or failed to act with the specific intent to cause harm to include defendants found to have acted or failed to act while intoxicated to the degree that their judgment was substantially impaired. But the second insert cut the other way. First, it restricted the exception from subsection (g)'s $250,000 cap on punitive damages awards to defendants who had the specific intent to cause

harm or were sufficiently intoxicated and who were *also* "active tort-feasors."[3] Second, it introduced a limited form of mandatory apportionment by specifying that uncapped punitive damages awards under subsection (f) "shall not be the liability of any defendant other than an active tort-feasor." Thus, under subsection (f), joint and several liability for uncapped punitive damages awards remained the default rule for defendants who had the specific intent to cause harm or were sufficiently intoxicated if they were also active tort-feasors. However, defendants who had the specific intent to cause harm or were sufficiently intoxicated who were *not* active tort-feasors, as well as defendants who did not have the specific intent to cause harm and were not sufficiently intoxicated, could no longer be held jointly liable for an uncapped punitive damages award against an active tort-feasor who had the specific intent to cause harm or

---

[3] That OCGA § 51-12-5.1 (f) refers to "the defendant" and "an active tort-feasor" in the singular does not mean that only one defendant may be liable for punitive damages under this subsection. See OCGA § 1-3-1 (d) (6) ("[T]he rules provided in this subsection shall govern the construction of all statutes with respect to the subjects enumerated. . . . **Number**. The singular or plural number each includes the other, unless the other is expressly excluded. . . .").

was sufficiently intoxicated, and any punitive damages award against them would be limited by the $250,000 cap in subsection (g).[4]

*Application to This Case.* The list of intoxicants in the first insert to OCGA § 51-12-5.1 (f) resembles the list of intoxicants in the DUI statute, which then as now said:

> A person shall not drive or be in actual physical control of any moving vehicle while:
> (1) Under the influence of alcohol to the extent that it is less safe for the person to drive;
> (2) Under the influence of any drug to the extent that it is less safe for the person to drive; [or]
> (3) Under the intentional influence of any glue, aerosol, or other toxic vapor to the extent that it is less safe for the person to drive. . . .

OCGA § 40-6-391 (a). But for present purposes, more important than what the General Assembly may have borrowed from the DUI statute is what it left behind. Unlike OCGA § 40-6-391 (a), OCGA § 51-12-5.1 (f) says nothing about "driv[ing]" or "moving vehicle[s]," instead referring more broadly to defendants who "acted or failed to act[.]" And unlike OCGA § 40-6-391 (a), OCGA § 51-12-5.1 (f)'s

---

[4] As noted above, the General Assembly later amended OCGA § 51-12-33 to make apportionment of damages mandatory in cases to which the apportionment statute applies. See Ga. L. 2005, p. 1, § 12.

application turns on whether a defendant was intoxicated "to that degree that his or her judgment is substantially impaired," not whether he or she was intoxicated "to the extent that it is less safe for the person to drive[.]" Thus, the 1997 amendment to OCGA § 51-12-5.1 (f) made uncapped punitive damages awards available against more than just DUI drivers. Under the plain language of OCGA § 51-12-5.1 (f), a tort plaintiff like Reid may seek an uncapped punitive damages award against any defendant who was intoxicated to the degree that his or her judgment was substantially impaired as long as that defendant also was an active tort-feasor.

OCGA § 51-12-5.1 does not define the term "active tort-feasor," but from the beginning, subsection (f) has made a distinction between tort defendants who "acted" and those who "failed to act." The text thus suggests that an "active tort-feasor" is a defendant who engages in an affirmative act of negligence or other tortious conduct, as opposed to a defendant whose negligence consists of an omission to act when he is under a legal duty to act. Moreover, this reading of the text comports with a preexisting distinction in

Georgia tort law. When the "active tort-feasor" language was added to OCGA § 51-12-5.1 (f) in 1997, Georgia law already distinguished between active and passive tort-feasors in the context of contribution and indemnity among joint tort-feasors. See, e.g., *Peacock Constr. Co. v. Montgomery Elevator Co.*, 121 Ga. App. 711, 713 (175 SE2d 116) (1970) (collecting cases, including *Central of Ga. R. Co. v. Macon R. & Light Co.*, 140 Ga. 309 (78 SE 931) (1913), and holding that it was "well recognized" in Georgia law that "an action over [for indemnity] lies where the liability of the tortfeasor compelled to pay damages is passive, consisting only of negative acts or omissions, e.g., in failing in his duty to inspect or discover a defective condition, and where the proximate cause of the injury, with respect to another tortfeasor, is active, consisting of positive acts of negligence").

Thus, in determining whether uncapped punitive damages are available under OCGA § 51-12-5.1 (f) against a defendant like Stroud, the question is not whether he was the DUI driver (or even whether a DUI driver was involved in the case). The question is

whether the defendant was intoxicated to the degree that his judgment was substantially impaired and whether his conduct that was a proximate cause of the plaintiff's injury "consist[ed] only of negative acts or omissions, e.g., in failing in his duty to inspect or discover a defective condition," or instead was "active, consisting of positive acts of negligence." *Peacock Constr. Co.*, 121 Ga. App. at 713.

Citing *Capp* and *Corrugated Replacements*, the trial court ruled that in a tort case involving a DUI driver, the DUI driver alone is the "active tort-feasor" for purposes of OCGA § 51-12-5.1 (f). See also *American Material Svcs. v. Giddens*, 296 Ga. App. 643, 647 (675 SE2d 540) (2009) (citing *Capp*). As explained above, however, there is no such categorical rule. To the extent that *Capp*, *Corrugated Replacements*, or *Giddens* suggests otherwise, they are hereby disapproved.

Accordingly, we must vacate the trial court's judgment to the extent that the court failed to consider awarding punitive damages against Stroud and remand the case for further consideration. See *Jova/Daniels/Busby, Inc. v. B & W Mech. Contractors*, 167 Ga. App.

551, 553 (307 SE2d 97) (1983) ("[W]hether negligence is active or passive is, generally speaking, a question of fact for determination by the trier of facts." (citation and punctuation omitted)). See also *Colt Indus. Operating Corp. v. Coleman*, 246 Ga. 559, 561 (272 SE2d 251) (1980) ("'Questions of negligence are ordinarily peculiarly within the jury's province . . . .'" (citation omitted)).

*Judgment vacated in part and case remanded with direction. All the Justices concur.*

S20A0107. REID v. MORRIS et al.

BETHEL, Justice, concurring.

I concur in the opinion of the Court. I believe that the Court

has faithfully examined the text of the statute and the relevant case law. In short, I think the Court has applied the right tools and the right law and delivered the right answer. But I fear the answer is not what the General Assembly actually intended. So I write separately to bring attention to the Court's interpretation of "active tort-feasor" in OCGA § 51-12-5.1 (f) in the hopes that the General Assembly will consider whether our interpretation of its language is, in fact, the desired law of Georgia.

Though it appears to be what the text says, I suspect that the "active" modifier addressed by the Court was not meant to delineate between tort-feasors whose torts involved affirmative acts and tort-feasors whose torts involved a failure to act. I generally doubt that the General Assembly intended to exclude from enhanced liability exposure a tort-feasor who was shown to have personally intended a harm but whose tort involved the withholding of some act compelled by a legal duty, while subjecting a similarly malicious tort-feasor whose breach of duty involved an affirmative act to such liability. But suspicion and doubt are not proper tools for appellate

judges. We employ familiar tools to understand text and precedent. And reason is our constant aim and guide.

I am satisfied that the Court has properly interpreted the language of this statute. So I join the opinion of the Court. I write separately to let our legislators know of my suspicion and doubt and to encourage them to consider whether what they passed is what they meant.

DECIDED JUNE 29, 2020.

OCGA § 51-12-5.1; constitutional question. Spalding State Court. Before Judge Thacker.

*Monge & Associates, Scott J. Harrison*, for appellant.

Keith S. Stroud, *pro se*.

Lakenin Morris, *pro se*.

*Christopher M. Carr, Attorney General, W. Wright Banks, Jr., Dennis R. Dunn, Senior Assistant Attorneys General, Kurtis G. Anderson, Assistant Attorney General, Andrew A. Pinson, Solicitor-General, Ross W. Bergethon, Deputy Solicitor-General; Chambless, Higdon, Richardson, Katz & Griggs, David N. Nelson; Drew, Eckl & Farnham, Jeffrey S. Ward, Elissa B. Haynes; Balch & Bingham, Anne Kaufold-Wiggins, Philip Thompson; Hawkins Parnell & Young, Martin A. Levinson; The Summerville Firm, J. Darren Summerville, Anna G. Cross, Maxwell K. Thelen*, amici curiae.