A99A1053. PLAZA PROPERTIES, LTD. et al. v. PRIME BUSINESS INVESTMENTS, INC.

(524 SE2d 306)

RUFFIN, Judge.

Prime Business Investments, Inc. sued Plaza Properties, Ltd. and its sole shareholder, Wayne Weeks, for breach of contract relating to a commission on the sale of a coin laundry business. Following a bench trial, the trial court entered judgment in favor of Prime. The defendants appeal, arguing that they were denied their right to a jury trial and that the evidence did not support the judgment. For the reasons discussed below, we affirm the trial court's judgment with respect to Weeks but reverse with respect to Plaza Properties.

1. When defendants filed their answer on January 27, 1997, they did not include a demand for trial by jury. On August 1, 1997, the trial court notified the parties that the case was scheduled for a non-jury trial on September 10, 1997. On September 3, Plaza Properties filed a written demand for a jury trial. Following a hearing on September 9, which was apparently not transcribed, the trial court entered an order rejecting the jury demand, stating that it did not comply with the court's standing order requiring jury demands to be filed ten days before trial.[1] The court then continued the trial until the next non-jury calendar because defendants' counsel had a conflict.

The case was then scheduled for trial on November 7, 1997. Before the start of trial, the court asked counsel if there were "[a]ny other matters we need to take up before opening statements." Defendants' counsel did not raise any objection to proceeding without a jury and did not object to the trial court rendering judgment on the merits.

On appeal, defendants contend that the trial court erred in denying them the right to a jury trial. Pretermitting whether the trial court's September 9 order was error, however, defendants waived their right to a jury trial by participating in the bench trial without protest. Our Supreme Court has held that "[a] demand for a jury trial is impliedly waived where the party making the demand participates

---

[1] The court apparently construed Plaza Properties' jury demand as a demand from both defendants.

in a bench trial without objection."[2] We have also held that

> [a] party to litigation cannot voluntarily participate in a trial before a judge without a jury, proceed without reservation to have the trial court hear the case without the intervention of a jury, not object to the trial court's rendering judgment on the merits, and, then, after an unfavorable judgment is rendered, set aside the judgment because no jury trial was had.[3]

Defendants contend that, because the trial court had already denied their jury demand in its September 9 order, their participation in the bench trial did not constitute a waiver. This contention is without merit. The bench trial did not occur until two months after the trial court's order, and at no time in the interim did the defendants indicate that they still desired a jury trial. This two-month silence, combined with a failure to raise any objection during the course of the bench trial or prior to the entry of judgment, even when questioned by the trial court, shows that the defendants acquiesced in proceeding to trial without a jury. As we previously held,

> no matter how erroneous the ruling might have been . . . , a litigant cannot submit to a ruling, acquiesce in the ruling, and still complain of same. He is required to stand his ground and fight in order to successfully enumerate as error an erroneous ruling by the trial judge. Acquiescence completely deprives him of the right to complain further; he has agreed that the trial court's ruling was correct by submitting to it. Failure to object to the procedure amounts to waiver.[4]

Because defendants participated in the bench trial without objection, they cannot, after having received an adverse decision, now complain that they were denied the right to a jury trial.

2. Defendants contend that the trial court's judgment is not supported by the evidence in several respects. In considering this enumeration, we construe the evidence in the light most favorable to support the trial court's judgment.[5] Moreover, in a bench trial, the trial court is the trier of fact, and its findings will be upheld on appeal if there is any evidence to support them.[6]

---

[2] *Matthews v. Matthews*, 268 Ga. 863, 864 (2) (494 SE2d 325) (1998).

[3] (Punctuation omitted.) *Goss v. Bayer*, 184 Ga. App. 730, 731 (2) (362 SE2d 768) (1987).

[4] (Punctuation omitted.) *Robinson v. Moonraker Assoc., Ltd.*, 205 Ga. App. 597, 598 (423 SE2d 44) (1992).

[5] *Mills v. Barton*, 205 Ga. App. 413, 414 (3) (422 SE2d 269) (1992).

[6] *CRS Sirrine v. Dravo Corp.*, 219 Ga. App. 301, 302 (1) (464 SE2d 897) (1995).

Viewed in the light most favorable to the judgment, the evidence showed as follows. In February 1995, Prime entered into a listing agreement with Peter Antoniades, the owner of Plaza Coin Laundry, in which Prime agreed to attempt to procure a purchaser for the laundry. Prime then began advertising and promoting the sale of the business. In response to an advertisement, Weeks contacted Prime to investigate the possibility of purchasing the laundry. On March 7, 1995, Weeks met with Mark McCurry, a sales agent with Prime. In return for Prime providing certain information regarding the laundry, including its name, location, asking price, and monthly rent, Weeks signed a contract agreeing to negotiate only through Prime for the purchase of the laundry. Weeks agreed that, if he violated the terms of the contract, he would be liable to Prime for any lost commission. Weeks also acknowledged that Prime was the first entity to provide him with the information about the laundry. After Weeks signed the contract, McCurry provided him with additional financial information about the laundry, including its sales and profitability.

After meeting with McCurry, Weeks sent him a letter stating that he was interested in the laundry and requesting further financial information about the business. McCurry testified that he subsequently tried to telephone Weeks, but that Weeks would not return his calls. This indicated to McCurry that Weeks was no longer interested in the purchase.

On March 30, 1995, without Prime's involvement, Weeks and Antoniades entered into a purchase and sale agreement for the laundry, with a purchase price of $165,000. The agreement, which was prepared by Weeks, stated that Robert Bader was the only agent authorized to sell the business, and provided that Bader would receive a $5,000 commission, less than one-third of what Prime would have been entitled to under its listing agreement with Antoniades. Weeks subsequently formed a corporation, Plaza Properties, of which he is the sole shareholder. The sale of the laundry was consummated on April 14, 1995, with Plaza Properties as the purchaser. Weeks executed the closing documents as president of Plaza Properties.

(a) Weeks contends that he is not liable to Prime for lost commission because Prime was entitled to a commission from Antoniades only if it was the procuring cause of the sale. However, the question is not whether Prime was in fact entitled to a commission from Antoniades, but whether it *would* have been entitled to a commission if Weeks had not breached his contract with Prime. Under that contract, Weeks agreed to negotiate for the purchase of the property only through Prime. Had Weeks in fact done so, Prime would have been entitled to a commission from Antoniades as the procuring cause of the sale. Accordingly, there was evidence to support the trial court's

finding that Weeks was liable for breach of contract.[7]

(b) Weeks also contends that there was no consideration for his contract with Prime. This contention is without merit, as the contract clearly provides that the consideration consisted of Prime's providing certain information to Weeks regarding the business, including its name, location, and asking price.[8]

(c) Weeks argues that there was no evidence to support the trial court's award of attorney fees under OCGA § 13-6-11. This contention also lacks merit. Under OCGA § 13-6-11, attorney fees may be awarded where there is bad faith "in defendant's carrying out the provisions of the contract."[9] In this case, there was sufficient evidence of Weeks' bad faith to justify an award of attorney fees. In exchange for the name and location of the business, as well as financial information regarding the business, Weeks agreed to negotiate only through Prime for the purchase of the business. Weeks then proceeded to enter into separate negotiations with the owner, without disclosing his agreement with Prime, and arranged for payment of a lower brokerage commission than would have been payable to Prime. Although Weeks claims that he already knew about the laundry before he met with Prime, this is contradicted by his express representation in the contract. Weeks refused to return telephone calls from Prime and failed to inform Prime that he had in fact purchased the business through a different broker. In our opinion, the evidence was sufficient for the trial court to find that Weeks demonstrated bad faith in the performance of his contract with Prime.[10]

(d) Finally, defendants argue that, even if Weeks is liable on the contract, there was no evidence to support the trial court's finding that Plaza Properties was liable on the contract. Prime does not respond to this argument in its brief.

It is a fundamental principle of law that "each corporation is a separate entity, distinct and apart from its stockholders."[11] It is also fundamental that "[a] person who is not a party to a contract (i.e., is not named in the contract and has not executed it) is not bound by its terms."[12] The contract in this case was executed by Weeks in his per-

---

[7] See generally *O'Brien's Irish Pub v. Gerlew Holdings*, 175 Ga. App. 162, 164 (2) (332 SE2d 920) (1985) (proof of procuring cause not required where exclusive contract exists).

[8] See *Pepsi Cola Bottling Co. &c. v. First Nat. Bank &c.*, 248 Ga. 114, 116 (2) (281 SE2d 579) (1981) (consideration may consist of "[a]ny benefit accruing to him who makes the promise, or any loss, trouble, or disadvantage undergone by, or charge imposed upon, him to whom it is made").

[9] *Wheat Enterprises v. Redi-Floors*, 231 Ga. App. 853, 857 (1) (c) (501 SE2d 30) (1998).

[10] Weeks also states that Prime was not entitled to prejudgment interest, but does not support this assertion with any argument whatsoever. Accordingly, we do not consider this issue. See *In the Interest of B. J. G.*, 234 Ga. App. 285, 287, n. 1 (506 SE2d 449) (1998).

[11] *Clark v. Cauthen*, 239 Ga. App. 226, 227 (2) (520 SE2d 477) (1999).

[12] *Martin v. Pierce*, 140 Ga. App. 897, 899 (1) (232 SE2d 170) (1977).

sonal capacity only; Plaza Properties was not a party to the contract and assumed no obligations thereunder. Under the contract, the parties simply agreed that if Weeks did not negotiate through Prime for the purchase of the laundry, then he would be personally responsible for any lost commission. They did not agree that any entity taking title to the business would also be liable. Thus, the mere fact that Plaza Properties was formed to take title to the business is not sufficient to render it liable on a contract it did not execute.

We need not consider whether a "piercing the corporate veil" theory may be applied in reverse — i.e., to render a *corporation* liable for its sole shareholder's individual obligations — because such a theory was not raised at trial nor ruled on by the trial court.[13] Even if such a theory were applicable and properly asserted, "[f]or the issue to be submitted to a jury there must be evidence that the corporate arrangement was a sham, used to defeat justice, to perpetrate fraud or to evade statutory, contractual or tort responsibility."[14] It was not the formation of the corporation that resulted in a breach of Weeks' agreement with Prime, but his failure to negotiate exclusively through Prime for the purchase. There was no evidence that Weeks abused the corporate form or rendered himself unable to satisfy Prime's claim by fraudulently transferring personal assets to the corporation. Therefore, even if the issue were properly raised, there was no evidence to support piercing of the corporate veil so as to render the corporation liable on Weeks' personal obligations.

We note that the only basis for liability asserted at trial was the contract between Weeks and Prime.[15] Because Plaza Properties was not a party to that contract, the trial court erred in entering judgment against the corporation.

*Judgment affirmed in part and reversed in part. Andrews, P. J., concurs. McMurray, P. J., concurs in Divisions 1 and 2 (a), (b) and (d) and in the judgment.*

DECIDED NOVEMBER 2, 1999 — 

*Joe A. Weeks*, for appellants.

---

[13] See *Davis v. Southern Exposition Mgmt. Co.*, 232 Ga. App. 773, 775 (3) (503 SE2d 649) (1998) (judgment against individual improper where "pierc[ing] the corporate veil" theory not asserted); compare *Derbyshire v. United Builders Supplies*, 194 Ga. App. 840, 844 (2) (a) (392 SE2d 37) (1990) (" '[W]hen *litigated*, the issue of "piercing the corporate veil" is a jury question' ") (emphasis supplied).

[14] Id.

[15] The complaint is somewhat ambiguous and does not set forth specific counts, but the only theory advanced at trial was breach of contract.

*Tobin & Hoffspiegel, Thomas W. Tobin, Valerie G. Tobin,* for appellee.