## A00A1269. GOLF MARKETING, INC. v. ATLANTA CLASSIC CARS, INC.
(538 SE2d 809)

ELDRIDGE, Judge.

Following a bench trial in the State Court of DeKalb County, the trial court found for plaintiff/appellee Atlanta Classic Cars, Inc. ("ACCI") on its contract action filed against defendant/appellant Golf Marketing, Inc. ("GMI"). GMI appeals. Finding no error in the trial court's judgment, we affirm.

---

The evidence, viewed to support the court's judgment,[1] shows that ACCI sponsors a yearly golf tournament at the Golf Club of Georgia at Creekside in Alpharetta. As incentive for participation, ACCI offers a Hole-in-One ("ace") bonus of a new automobile. During the May 19, 1998 tournament at issue, a new 500SL Mercedes Benz sedan was to be awarded to the first participant lucky enough to ace the designated prize hole: the 184-yard, par three 11th hole at Creekside. The retail price of the sedan was $81,495.

Prior to the tournament, ACCI contracted with GMI to underwrite the Hole-in-One giveaway by indemnifying ACCI for the retail price of the Mercedes, should the loss of that car occur by virtue of an ace on the designated prize hole.[2] ACCI had contracted with GMI the previous year for the same purpose.[3] The 1998 contract was signed by both parties. The premium cost of the underwriting was $2,300, a check for which was cut by ACCI on May 14, 1998, sent to GMI, and deposited thereby. GMI then sent signage to Creekside which was displayed on the prize hole and advised the golfers of the prize to be won. The signage advertised GMI's participation in ACCI's tournament.

During the May 19, 1998 tournament, using a seven iron, Jeff Wright aced the 11th hole. He was awarded the Mercedes sedan. The next day, ACCI informed GMI that the prize had been awarded and demanded reimbursement pursuant to contract. At the end of May, ACCI received a letter from GMI dated the day before the tournament, May 18, 1998, which stated "we are confirming and agreeing to the request to halt all business with Atlanta Classic Cars as of May 18th, 1998, three o'clock p.m., until further notice." In response, ACCI sent GMI two separate letters requesting reimbursement for the loss of the car as per the contractual agreement. Thereafter, in an undated letter received by ACCI on July 31, 1998, GMI sent ACCI a check for $2,300 and stated "[a]s per the request of Atlanta Classic

---

[1] *Plaza Properties v. Prime Business Investments*, 240 Ga. App. 639, 640 (2) (524 SE2d 306) (1999).

[2] By brief, GMI argues that the instant contract was not an "insurance" contract governed by the Georgia Insurance Code, OCGA § 33-1-1 et seq. However, the instant contract sought to indemnify ACCI for loss occurring due to a specific, determinable contingency which may or may not occur, i.e., an ace on the 11th hole. The contract is referred to as a "policy"; the payment for the contract is referred to as a "premium"; the indemnification is referred to as "coverage"; and a request for payment under the policy is referred to as a "claim." Thus, despite GMI's assertions to the contrary, we find the contract at issue to be in the nature of an "insurance" contract per OCGA § 33-1-2 (2) and governed by the applicable Code section.

[3] During the 1997 ACCI tournament, no one was awarded an automobile. However, an ace was made on a different par three hole which carried the prize of a golf vacation, also underwritten by GMI. The winner thereof had difficulty redeeming his prize since, after the tournament, GMI informed the winner that the vacation could only be taken during Thanksgiving day weekend, a fact unknown to ACCI at the time of contract.

Cars, we are enclosing a check in the amount of $2300 for your return of fees, for your cancellation of Contract." ACCI then sent the check back to GMI and filed suit, seeking the price of the Mercedes pursuant to contract, plus interest from the time that the demand on the contract was made.

At trial, GMI defended on two grounds: (1) GMI's southeast sales representative, Craig Meyers, asserted that David Smith, the sales manager at ACCI, orally rescinded the contract during a telephone conversation the day before the tournament; and (2) GMI claimed defense on contract, alleging that ACCI failed to follow the specific terms of the contract in proving an ace was made on the 11th hole during the tournament.

During ACCI's case, Smith testified that he never rescinded the contract and certainly would not have done so via telephone the day before the tournament, since "I wouldn't have been able to get any other insurance in place, even if I had wanted to do something like that." ACCI also claimed that any failure with regard to proof of the ace was due to GMI's attempts to claim rescission of the contract.

Following trial and prior to the court's ruling, the parties filed briefs outlining the legal issues and the law with regard thereto. In a one-page order containing neither findings of fact nor conclusions of law, the trial court found for ACCI and awarded damages as requested. *Held*:

1. At the onset, GMI asserts that "[w]hether or not ACCI . . . suspended the contract remains in dispute and is not the subject of this appeal." We disagree. While such was a disputed issue at trial — with Meyers claiming the contract was rescinded and Smith vigorously denying same — this issue is not in dispute before this Court. It was clearly raised and litigated. The credibility of the witnesses for each party was solely a matter for the trier of fact to determine,[4] and the trial court plainly stated its intention to rule on this issue: "I don't find — Or, at least, I'll be surprised, after I have reflected on this, that I arrive at a conclusion that the contract had been unilaterally rescinded by Mr. Smith." And, in fact, if ACCI had rescinded the contract prior to the tournament as alleged and argued by GMI, then GMI's defense on contract argument regarding the specific terms thereof need never be reached. The trial court necessarily resolved this issue adversely to GMI in order to even reach the topic that GMI now asserts is the "subject of this appeal." The testimony by ACCI's Smith that he never rescinded the contract, as well as substantiating evidence and argument offered by ACCI, supports the trial court's determination that the contract was valid and enforceable at the

---

[4] OCGA § 24-4-4.

time ACCI's demand for reimbursement on the contract was made.

2. GMI contends the trial court erred in "not enforcing the plain conditions of the contract requiring two independent witnesses to the Hole-In-One at the main prize hole in order for ACCI to have the benefit of the contract." We do not agree.

Pursuant to provisions of the contract regarding proof of the ace to support the loss of the car, ACCI submitted attesting statements from the ace winner, from his three playing partners, and from the tournament director. When the prize has a value of $50,001 to $100,000, as in this case, subsection B1 of the contract at issue also calls for attesting statements from two persons, over eighteen years of age and "independent in nature," who witnessed the ace. ACCI did not submit such "independent" attesting statements to GMI as proof of the loss.

However, subsection C of the contract deals with claim notification and proof of the claim. In that regard, C1 states in all capital letters: "CLAIM NOTIFICATION — NOTICE OF CLAIM BY CLIENT MUST BE REPORTED TO THE CONTRACTING OFFICER OF GMI ON THE FIRST BUSINESS DAY AFTER THE EVENT."[5] It is undisputed that ACCI complied with this provision of the contract and informed GMI of the ace on the morning after the tournament. ACCI then sent GMI two separate letters discussing the ace and requesting reimbursement for the loss of the Mercedes sedan.

Subsection C2 is headed: "PROOF OF CLAIM" and specifically states in all capital letters under C2 (e) that "APPROPRIATE FORMS AND INSTRUCTIONS WILL BE FURNISHED TO CLIENT SUBSEQUENT TO EVENT AND CLAIM (per C1)." The express terms of the contract preclude the necessity for ACCI to request forms and instructions, since GMI *will furnish* such forms after receiving notice per C1, which notice was indisputably received by GMI in this case.

Testimony at trial further clarified that the forms and instructions GMI was to furnish to ACCI under subsection C2 (e) of the contract included those forms applicable to the "independent witnesses" requirement for proof of the ace. As stated by GMI's Meyers:

And what we do is distribute what's called testament forms, which, in this case, would have gone out to — There's a yardage verification. There are three testament forms which apply to the playing partners. And, in this case, there would have been two additional forms which apply to the independent witnesses, who should have been supplied, and to the

---

[5] The immediacy of this notice requirement would appear to preclude that such initial notification be in writing.

hole-in-one winner and the tournament director.

Testimony also showed that GMI President and CEO Kevin Kolenda specifically instructed Meyers not to send the forms to ACCI because of the rescission issue and that Kolenda had no intention of paying ACCI's claim:

> [Trial Court:] And then, when asked to supply the forms necessary to make the claim, Mr. Kolenda had told you "Don't send those out?"
> [Meyers:] Correct. . . .
> [Defense Counsel:] Mr. Meyers was asked about a part of the contract down at "C, 2, e" where appropriate forms and instructions will be furnished to clients subject to event and claim. . . . Did you send them?
> [Kolenda:] No. . . . Business was completely suspended. There was no need to go any further.

It is clear that ACCI's receipt from GMI of the forms and instructions under subsection C2 (e) of the contract, including the attestation forms for the two required independent witnesses, was necessary for ACCI's proper completion of the proof requirements. Since as discussed in Division 1, supra, the contract was not rescinded but was valid and enforceable at the time ACCI's demand was made, it was GMI that failed to comply with the plain terms of the contract by failing to send ACCI the proof forms after receiving proper notification per subsection C1 of the contract, as well as subsequent written notice requesting reimbursement for the loss of the Mercedes sedan: "[GMI's] own failure to furnish proof of loss forms in a timely manner after receiving written notice of the loss . . . would constitute a waiver of strict compliance with this [proof] requirement."[6] Accordingly, GMI's claims regarding any deficiency in ACCI's proof of the ace are waived, and there was no error in the trial court's judgment.

*Judgment affirmed. Blackburn, P. J., and Barnes, J., concur.*

---

[6] *Canal Ins. Co. v. Savannah Bank &c. Co.*, 181 Ga. App. 520, 521 (2) (352 SE2d 835) (1987). See OCGA § 33-24-39; *Williams v. Southern Gen. Ins. Co.*, 211 Ga. App. 867 (1) (440 SE2d 753) (1994); *Britt v. Independent Fire Ins. Co.*, 184 Ga. App. 225, 227 (2) (361 SE2d 226) (1987).

DECIDED AUGUST 30, 2000.

*Drew, Eckl & Farnham, Clayton H. Farnham*, for appellant.
*Freisem, Macon, Swann & Malone, John A. Swann*, for appellee.