### S03G0500. ACREE et al. v. McMAHAN.
(585 SE2d 873)

CARLEY, Justice.

Dr. Russell Acree formed Memorial Health Services, Inc. (MHS) to manage various small hospitals. MHS entered into a management agreement with Irwin County Hospital (Hospital). Acree, Dr. Howard McMahan, and Dr. Gene Jackson formed AJM, Inc. in furtherance of their agreement for McMahan and Jackson to relocate and eventually become part of the management team at the Hospital. Due to subsequent disagreements, Acree, acting in his individual capacity, agreed to purchase McMahan's and Jackson's interest in AJM for $750,000 each. For over a year, Acree caused MHS and the Hospital to make the payments for which he was obligated under the buyout agreement. After further conflict, however, Jackson discontinued his practice in the area, and Acree later terminated the payments to McMahan. Although the agreement was with Acree, McMahan brought suit against both Acree and MHS (Appellants) to recover damages for breach of contract. The jury returned a verdict against both Appellants, on which the trial court entered judgment in favor of McMahan. The Court of Appeals affirmed, concluding, as to the judgment against MHS, that the concept of reverse piercing of the

corporate veil is applicable in Georgia and that the trial court did not err in its charge thereon. *Acree v. McMahan*, 258 Ga. App. 433 (574 SE2d 567) (2002). This Court granted certiorari to consider whether the doctrine of reverse piercing of the corporate veil can be applied in this state. We reject reverse piercing, at least to the extent that it would allow an "outsider," such as a third-party creditor, to pierce the veil in order to reach a corporation's assets to satisfy claims against an individual corporate insider.

An increasing number of courts have recognized the distinction between "insider" and "outsider" reverse piercing claims, first articulated in Crespi, "The Reverse Pierce Doctrine: Applying Appropriate Standards," 16 J. Corp. L. 33, 37 (II) (A) (1990). Outsider reverse veil-piercing extends the "traditional veil-piercing doctrine to permit a third-party creditor to 'pierce( ) the veil' to satisfy the debts of an *individual* out of the corporation's assets. [Cit.]" (Emphasis in original.) *C.F. Trust v. First Flight*, 306 F3d 126, 134 (III) (A) (4th Cir. 2002) (certifying the question to the Supreme Court of Virginia). Only a few jurisdictions have addressed this version of disregarding the corporate entity. Crespi, supra at 56 (II) (C) (1). Some jurisdictions permit such claims, but place strict limitations on its application, such as requiring the plaintiff to prove that no innocent third-party creditor or shareholder would suffer harm or prejudice as a consequence of reverse veil-piercing and that there is no other available remedy, such as the usual judgment collection procedures. *C.F. Trust v. First Flight*, supra at 138 (III) (A); *C.F. Trust v. First Flight*, 580 SE2d 806, 811 (IV) (Va. 2003) (answering the certified question from the Fourth Circuit).

The issue is one of first impression in this state. Certain opinions of our Court of Appeals have held that the evidence in the particular case would not support reverse piercing assuming that the doctrine were viable. *Plaza Properties v. Prime Business Investments*, 240 Ga. App. 639, 643 (2) (d) (524 SE2d 306) (1999); *Gwinnett Property, N.V. v. G+H Montage GmbH*, 215 Ga. App. 889, 893 (2) (453 SE2d 52) (1994); *Hogan v. Mayor & Aldermen of Savannah*, 171 Ga. App. 671, 673 (3) (320 SE2d 555) (1984) ("insider" reverse piercing claim). However, we "find no authority under Georgia law and plaintiff[ ] [has] cited none for the 'reverse pierce.'" *Hogan v. Mayor & Aldermen of Savannah*, supra at 673 (3). Furthermore, the Court of Appeals has ruled that reverse piercing of the corporate veil is improper where a plaintiff simply recasts a fraudulent conveyances theory. *Gwinnett Property, N.V. v. G+H Montage GmbH*, supra at 893 (2).

"Reverse alter ego is an equitable doctrine; it stretches the imagination, not to mention the equities, to conceive of how someone wholly outside the corporation may be used to pierce the corporate veil from within." *Estate of Daily v. Title Guaranty Escrow Svc.*, 178

B.R. 837, 845 (III) (D. Hawaii 1995).

> The [outsider] reverse-pierce theory presents many problems. It bypasses normal judgment-collection procedures, whereby judgment creditors attach the judgment debtor's shares in the corporation and not the corporation's assets. Moreover, to the extent that the corporation has other non-culpable shareholders, they obviously will be prejudiced if the corporation's assets can be attached directly. In contrast, in ordinary piercing cases, only the assets of the particular shareholder who is determined to be the corporation's alter ego are subject to attachment. [Cit.]

*Cascade Energy and Metals Corp. v. Banks*, 896 F2d 1557, 1577 (I) (D) (2) (10th Cir. 1990).

> Although in *Cascade* [the] particular concern was with nonculpable third-party shareholders of the corporation being unfairly prejudiced, no greater culpability should attach to . . . third-party corporate creditors harmed by reverse-piercing. . . . There are reasons beyond those identified in *Cascade* to deny an alter ego claim of this kind. For one thing, the prospect of losing out to an individual shareholder's creditors will unsettle the expectations of corporate creditors who understand their loans to be secured – expressly or otherwise – by corporate assets. Corporate creditors are likely to insist on being compensated for the increased risk of default posed by outside reverse-piercing claims, which will reduce the effectiveness of the corporate form as a means of raising credit. Furthermore, as Judge Learned Hand suggested in what may be the earliest case to consider such a claim, outside reverse piercing is only appropriate in the rare case of a subsidiary dominating its parent. See *Kingston Dry Dock Co. v. Lake Champlain Transp. Co.*, 31 F2d 265, 267 (2d Cir. 1929); see also Crespi[, supra] at 67 (*"Kingston* stands for the proposition that the highly unusual circumstance of a subsidiary dominating its parent is a virtual prerequisite for finding the kind of unity that would allow an outside( ) reverse pierce. . . ."); [cit.]

*Floyd v. I.R.S.*, 151 F3d 1295, 1299-1300 (III) (10th Cir. 1998). See also *Olympic Capital Corp. v. Newman*, 276 FSupp. 646, 655 (C.D. Cal. 1967). Furthermore, disregard of the corporate form rests on equitable principles. *Hester Enterprises v. Narvais*, 198 Ga. App. 580, 581 (1) (402 SE2d 333) (1991).

As a consequence, it is appropriately granted only in the absence of adequate remedies at law. [Cit.] In cases where a corporation has been dominated by a controlling stockholder, an agency . . . theory may suffice to hold the corporation liable for the actions of that stockholder. [Cit.] Standard judgment collection procedures may also suffice to cover shareholder liability without expanding equitable theories of corporate liability. [Cit.]

*Floyd v. I.R.S.*, supra at 1300 (III). Accordingly,

we are inclined to conclude that more traditional theories of conversion, fraudulent conveyance of assets, respondeat superior, and agency law are adequate to deal with situations where one seeks to recover from a corporation for the wrongful conduct committed by a controlling stockholder without the necessity to invent a new theory of liability.

*Cascade Energy and Metals Corp. v. Banks*, supra at 1577 (I) (D) (2). *Gwinnett Property, N.V. v. G+H Montage GmbH*, supra at 893 (2). Allowing outsider reverse piercing claims would constitute a radical change to the concept of piercing the corporate veil in this state and, thus, should be created by the General Assembly and not by this Court. See *Hogan v. Mayor & Aldermen of Savannah*, supra at 674 (3).

Under the rulings in Divisions 2 through 4 of the Court of Appeals' opinion, McMahan prevailed under the buyout agreement against Acree individually. *Farmers Warehouse v. Collins*, 220 Ga. 141, 151 (2) (d) (137 SE2d 619) (1964). "It is not necessary to disregard the corporate entity for [McMahan] to acquire his rights under his contract." *Farmers Warehouse v. Collins*, supra at 151 (2) (d). Therefore, we affirm the judgment of the Court of Appeals with respect to Acree, but reverse with respect to MHS. *Farmers Warehouse v. Collins*, supra at 151 (2) (d). See also *Plaza Properties v. Prime Business Investments*, supra at 643 (2) (d).

*Judgment affirmed in part and reversed in part. All the Justices concur.*

DECIDED JULY 10, 2003 —
RECONSIDERATION DENIED SEPTEMBER 5, 2003.

*Bouhan, Williams & Levy, Walter C. Hartridge, Roy E. Paul, David M. Conner, Odom & Des Roches, John G. Odom*, for appellants.

*O. Wayne Ellerbee*, for appellee.