**FIRST DIVISION
BARNES, P. J.,
MILLER, P. J., and PIPKIN, J.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed. Please refer to the Supreme Court of Georgia Judicial Emergency Order of March 14, 2020 for further information at (https://www.gaappeals.us/rules).**

**May 1, 2020**

# In the Court of Appeals of Georgia

A20A0142. LFR INVESTMENTS, LLC et al. v. VAN SANT.        MI-018

MILLER, Presiding Judge.

LFR Investments, LLC seeks review of the trial court's grant of partial summary judgment to David Van Sant in LFR's dispute with Van Sant over a contract to transfer property and build a house. LFR challenges the trial court's conclusion that it was not properly licensed to build the house and therefore could not sue to enforce the contract under OCGA § 43-41-17 (b). The trial court correctly determined that LFR was not properly licensed, and so we affirm.

> Summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. OCGA § 9-11-56 (c). On appeal, we review the grant or denial of summary

judgment de novo, construing the evidence and all inferences in a light most favorable to the nonmoving party.

(Citations and punctuation omitted.) *HA&W Capital Partners, LLC v. Bhandari*, 346 Ga. App. 598, 599 (1) (816 SE2d 804) (2018).

So viewed, the record shows that, in March 2016, Van Sant contracted with LFR to purchase a property in Forsyth County, Georgia and hired LFR to build a house on that property. About a year later, before the house was completed, Van Sant terminated the contract to build the house and hired other contractors to finish the project.

At the time the contract was executed, LFR was a Georgia limited liability company whose sole member was Louis Reynaud. Reynaud was properly licensed as a residential basic qualifying agent, and he was registered with the Georgia Department of State as a qualifying agent for the entity Peachtree Gardens Development, Inc., but he was not licensed as an agent for LFR. Reynaud obtained the permit to build Van Sant's house through his capacity as an agent of Peachtree Gardens Development, Inc. and not as an agent of LFR.

LFR filed a complaint against Van Sant, raising claims for breach of contract, unjust enrichment, and attorney fees stemming from Van Sant's termination of the

house-building portion of the contract.[1] Van Sant answered and filed numerous counterclaims against LFR, Reynaud, and a related entity Cornerstone Residential, LLC, alleging numerous deficiencies in their performance and construction of the house.

Van Sant filed a motion for partial summary judgment, arguing that LFR lacked the ability to enforce the contract because it was not licensed to build homes and because Reynaud was not properly registered as a qualifying agent on LFR's behalf. Following a hearing, the trial court granted the motion for partial summary judgment.[2] LFR, Reynaud, and Cornerstone then filed this appeal.[3]

---

[1] The portion of the contract that transferred the property to Van Sant does not appear to be at issue.

[2] Van Sant's counterclaims remain pending before the trial court.

[3] Van Sant moves to dismiss this appeal as to Reynaud and Cornerstone on the grounds that they lack standing to appeal the summary judgment order because it did not resolve any claims related to them. As a losing party, however, LFR has standing to appeal the summary judgment entered against it. *Shackelford v. Green*, 180 Ga. App. 617, 618 (349 SE2d 781) (1986). Insofar as Reynaud and Cornerstone have not filed separate briefs and do not ask us for any relief beyond that requested by LFR, there is no requirement that they independently demonstrate their appellate standing to appeal. See OCGA § 5-6-37 ("*All* parties to the proceedings in the lower court *shall* be parties on appeal[.]") (emphasis supplied); *Marsden v. Southeastern Sash & Door Co., Inc.*, 193 Ga. App. 597, 598 (1) (388 SE2d 730) (1989) ("[O]nce a notice of appeal is timely filed, all parties to all proceedings in the lower court are parties on appeal and may, subject to the rules governing practice before this court,

1. In two related enumerations of error, LFR first argues that the trial court erred in granting summary judgment on the grounds that it could not enforce the contract because it was not properly licensed. In particular, LFR argues that, because Reynaud was a licensed qualifying agent, his status as a licensed qualifying agent should be imputed to LFR as a whole. After a close examination of the relevant statutory framework, we conclude that the trial court correctly concluded that Reynaud's status could not be imputed to LFR, and thus LFR cannot enforce the contract.

"On appeal, we review the lower court's interpretation of a statute de novo, as statutory interpretation is a question of law." (Citation omitted.) *Hill v. First Atlantic Bank*, 323 Ga. App. 731, 732 (747 SE2d 892) (2013). Our construction of a statute also "must square with common sense and sound reasoning[,]" and we must avoid "unreasonable or absurd consequences not contemplated by the legislature." (Citations omitted.) *Tolleson Lumber Co. v. Kirk*, 200 Ga. App. 689, 691 (2) (409 SE2d 260) (1991).

Georgia law provides that

participate in the appellate process.") (citations and punctuation omitted). Accordingly, we DENY Van Sant's motion to dismiss.

[a]s a matter of public policy, any contract entered into on or after July 1, 2008, for the performance of work for which a residential contractor or general contractor license is required by this chapter and not otherwise exempted under this chapter and which is between an owner and a contractor who does not have a valid and current license required for such work in accordance with this chapter shall be unenforceable in law or in equity by the unlicensed contractor.

OCGA § 43-41-17 (b).

Here, the contract identified LFR as the "Builder" and, in a section marked "Contract Work," specified that LFR "shall perform the labor and services and provide all materials necessary to construct" the house on the property; thus, LFR met the statute's definition of a "contractor."[4] The record is clear that LFR itself did not have a Georgia contractor's license when the construction contract was executed, nor did it have one when the work was performed pursuant to the contract. "Thus, under OCGA § 42-41-17 (b), the construction contract is not enforceable by [LFR] in law or in equity unless an exemption applies." *Baja Properties, LLC v. Mattera*, 345 Ga. App. 101, 103 (1) (812 SE2d 358) (2018).

---

[4] See OCGA § 43-41-2 (4) ("'Contractor' . . . means a person . . . who, for compensation, contracts to, offers to undertake or undertakes to, submits a bid or a proposal to, or personally or by others performs the construction or the management of the construction for an owner of any building, bridge, or other structure[.]").

5

LFR does not argue that any particular exemption applies, but it instead argues that, because its sole member Reynaud was properly licensed as a statutory "qualifying agent," LFR should be considered properly licensed and able to enforce the contract. We find LFR's argument to be foreclosed by the plain text of the statute. The statute first specifically provides that

> [N]o person, whether an individual or a business organization, shall have the right to engage in the business of residential contracting or general contracting without a current, valid residential contractor license or general contractor license, respectively, issued by the division under this chapter or, *in the case of a business organization, unless such business organization shall have a qualifying agent as provided in this chapter holding such a current, valid residential contractor or general contractor license on behalf of such organization issued to such qualifying agent as provided in this chapter.*

(Emphasis supplied.) OCGA § 43-41-17 (a). For a business to be considered properly licensed, therefore, it must have at least one qualifying agent that is properly licensed, and that qualifying agent must specifically hold a license on that business's behalf. The statute further provides the following in terms of what an individual must do to hold a license on a business's behalf:

> Where an applicant under this chapter is seeking issuance of a residential or general contractor license on behalf and for the benefit of

6

a business organization seeking to engage in residential or general contracting as a business organization, the application for a license under this chapter *must be submitted* by and through an individual qualifying agent for such business organization or entity and *expressly on behalf of such business organization or entity*.

(Emphasis supplied.) OCGA § 43-41-9 (a). For Reynaud to be considered a qualifying agent on LFR's behalf, the statute therefore makes clear that Reynaud must hold a license specifically on LFR's behalf, and to obtain that license, Reynaud must have applied for such license with the Department of State "expressly on behalf of" LFR. The plain language of the statute thus compels a conclusion that the mere fact that LFR has in its employ a person who is otherwise licensed as a qualifying agent is insufficient. If we accepted LFR's position that Reynaud's status as a licensed qualifying agent could be imputed to LFR merely through his employment, the work that he performed, or through his status as LFR's sole member, it would entirely nullify these express statutory requirements that a business must have an individual apply as a qualifying agent on behalf of that business, and then hold a license on behalf of that business, in order for that business to be considered properly licensed. See *Couch v. Red Roof Inns, Inc.*, 291 Ga. 359, 362 (1) (729 SE2d 378) (2012) ("The

fundamental rules of statutory construction require us . . . to avoid a construction that makes some language mere surplusage.") (citation and punctuation omitted).[5]

We further note, as the trial court did, that the statute explicitly contemplates that "[a] qualifying agent may serve in such capacity for more than one business organization." OCGA § 43-41-9 (e) (2). To do so, however, the statute specifies that the qualifying agent must still "satisfy the criteria for serving in such capacity with regard to each such business organization," the qualifying agent "shall inform the [requisite Licensing Board] division having jurisdiction in writing when he or she proposes to engage in contracting . . . as a qualifying agent with another business organization," and the qualifying agent or the business "shall supply the same information to the division as required of applicants under this chapter." OCGA § 43-41-9 (e) (2). Because there is no record evidence that Reynaud ever applied or registered on LFR's behalf with the appropriate division, this provision is similarly unavailing.

---

[5] Because we conclude that Reynaud is not properly considered a qualifying agent on LFR's behalf, we similarly reject LFR's argument that it is entitled to enforce the contract under OCGA § 43-41-11, which provides that "[t]he issuance of a license . . . shall be evidence that the person named therein, including both the individual licensee and any business organization for whom such licensee is a qualifying agent, is entitled to all the rights and privileges of a licensed residential or general contractor[.]"

Because there is no evidence in the record that any license specifically on LFR's behalf was ever provided to a qualifying agent by the Department of State, or that Reynaud applied and registered on LFR's behalf with the appropriate division, LFR has not established that it is licensed to do residential construction work, regardless of whether Reynaud or any of LFR's related entities are otherwise properly licensed. The trial court therefore correctly ruled that LFR is barred under OCGA § 43-41-17 (b) from enforcing the contract.

2. LFR also argues that the trial court erred in granting summary judgment because genuine fact issues remained on his alter ego theory. Specifically, LFR argues that, because Van Sant is pursuing a claim to pierce LFR's corporate veil as part of his counterclaims, LFR should be allowed to take advantage of Van Sant's pleadings and simultaneously pierce its own corporate veil to let Reynaud's certification status be applied to LFR as a whole. We are unpersuaded.

"The concept of piercing the corporate veil is applied in Georgia to remedy injustices which arise where a party has over extended his privilege in the use of a corporate entity in order to defeat justice, perpetuate fraud or to evade contractual or tort responsibility." (Citation omitted.) *TMX Finance, LLC v. Goldsmith*, 352 Ga. App. 190, 210 (6) (833 SE2d 317) (2019). "The doctrine of piercing the corporate

9

veil is generally used for the purpose of piercing the corporate veil to hold an individual stockholder liable for debts incurred by the corporation." (Citation and punctuation omitted.) Id. "[D]isregard of the corporate form rests on equitable principles." (Citations omitted.) *Acree v. McMahan*, 276 Ga. 880, 882 (585 SE2d 873) (2003).

Here, LFR is not seeking to pierce its own corporate veil because it "over-extended [its] privilege in the use of a corporate entity in order to defeat justice, perpetuate fraud or to evade contractual or tort responsibility," but it instead seeks to be excused from compliance with a statutory licensing requirement. "We find no authority under Georgia law and [LFR has] cited none" that would allow it to pierce its own veil in this situation, especially since Reynaud was already properly registered as a qualifying agent for another entity and was thus ostensibly aware of the relevant requirements. *Hogan v. Mayor & Aldermen of Savannah*, 171 Ga. App. 671, 673 (3) (320 SE2d 555) (1984) (party could not "reverse pierce" the corporate veil to have the corporation's president, rather than the corporation, listed as the named insured in an insurance contract).

Accordingly, the trial court correctly concluded that LFR was not properly licensed and was therefore barred from enforcing the contract under OCGA § 43-41-17 (b). We therefore affirm the grant of partial summary judgment.

*Judgment affirmed. Barnes, P. J., and Pipkin, J., concur.*